LOUIS ETTLINGER, Appellant, *v.* PERSIAN RUG AND CARPET COMPANY, PAUL M. KRAUSE and THEODORE SCHUMACHER, Respondents.

*Jurisdiction — an insane trustee for bondholders — right of a bondholder to foreclose the mortgage — receiver — notice — appearance — interlocutory judgment — reopening a case.*

A domestic corporation, the Persian Rug and Carpet Company, executed a chattel mortgage upon its property to Paul M. Krause, as trustee for Louis Ettlinger and Theodore Schumacher, the holders of certain bonds.  The interest upon the bonds being unpaid Louis Ettlinger began an action to foreclose the mortgage, the complaint in which alleged that Paul M. Krause was confined in an insane asylum in Germany, that the corporation was insolvent, and that the mortgaged chattels were likely, at great expense, to be removed from demised premises by the landlord because of the non-payment of rent by the company, and demanded the appointment of a receiver.

*Held*, that the question whether the court had jurisdiction of an action, brought under such circumstances by a bondholder instead of by the trustee, was one of law to be determined upon the complaint alone.

That as it appeared that present loss of property was apprehended, and as a demand upon the trustee to begin an action to foreclose would, because of his mental incompetency, have been futile, an action could be maintained by Ettlinger as a bondholder.

Upon an application for the appointment of a receiver notice was given to the corporation and to the attorney-general, but none was given to the trustee Krause.

*Held*, that as the court had acquired jurisdiction of the corporation by service upon it, and as it had appeared by attorney, the appointment was regular.

That section 714 of the Code of Civil Procedure did not apply to a case where a corporation had appeared.

It appeared that the receiver had sold the property of the corporation under an order of the court, much of it to Ettlinger at a very small price; that a judgment-creditor had levied upon the property sold before this sale, and the court had by order preserved his lien upon the proceeds. It further appeared that the court below deemed the action for the foreclosure of the mortgage collusive, and an attempt by Ettlinger to gain possession of all the assets to the exclusion of Theodore Schumacher.

Upon the trial the complaint was dismissed.

*Held*, that such dismissal was improper.

That, conceding that the action was collusive, the proper course would have been to direct an interlocutory reference to ascertain the value of the property of which Ettlinger had by the sale obtained possession; and when that was ascertained to direct that property be placed in the receiver's hand equal to the amount which Ettlinger had appropriated.

That while the *status quo* could not be restored, the rights of all parties could in this manner be best adjusted.

That a refusal to reopen a case to admit further testimony rests in the discretion of the court, to which the application is made, and the appellate court will not interfere unless the refusal is unjustifiable.

APPEAL by the plaintiff Louis Ettlinger from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 20th day of April, 1892, dismissing the complaint upon the merits after a trial at the New York Circuit before the court; and also from an order of said court, dated the 15th day of March, 1892, and entered in said clerk's office, denying a motion by the plaintiff to introduce further evidence.

The action was brought for the foreclosure of a chattel mortgage by one of the holders of bonds secured thereby. By the decision of the court before which the action was tried it appeared that a receiver of the mortgaged chattels appointed in the action had sold them; and that the plaintiff Ettlinger had purchased certain of the property at the receiver's sale, including certain machinery, at what was claimed to be an insufficient price.

*Thomas P. Wickes*, for the appellant.

*Francis B. Chedsey*, for the respondents.

O'Brien, J.:

This action was brought by the plaintiff to foreclose a chattel mortgage executed by the Persian Rug and Carpet Company, a domestic corporation, to defendant Krause, as trustee for the holders of a series of twenty-five $1,000 bonds, of which there were issued twenty-one, fourteen of which were held by the plaintiff and seven by the defendant Schumacher. There is no dispute but that at the time of the commencement of the action the interest upon the bonds was due and unpaid, and a cause of action for the foreclosure of the mortgage existed.

The questions most seriously litigated upon the trial, and determined by the judgment appealed from, were that the plaintiff had no *status* to maintain the action; that the court was without jurisdiction to appoint a receiver or direct the sale of the property; that the sale under the order was improper, as being one step in a collusive action by plaintiff to obtain possession of the corporate property.

If the view taken by the learned trial judge that the court was without jurisdiction to entertain the action by reason of the plaintiff not having a legal *status* to bring such suit be correct, then we agree with him that the orders made upon the assumption of such jurisdiction would be void. It must be conceded that the complaint alleges every allegation essential to a complete cause of action to foreclose a mortgage, and the legal *status* of the plaintiff to maintain the action is alone involved in determining the question of the court's jurisdiction. The complaint, in addition to the cause of action in favor of some one, alleges the insolvency of the defendant company, the necessity for immediate proceedings to foreclose, by reason of the character of the assets, consisting principally of heavy machinery which could not be removed without great expense, and the imminent danger of its being removed from the premises by summary proceedings because of inability to pay rent, and the damage and injury that would result to the bondholders if the machinery and other property were removed from the premises before a sale thereof could be had. The complaint also alleges that the trustee, Krause, did, while in Germany, become violently and incurably insane, and that he is now confined in a lunatic asylum at Frankfort, in the Empire of Germany, and cannot act under said mortgage as

trustee to preserve and sell said property for the benefit of said bondholders.

The question thus presented at the outset is as to whether the court had jurisdiction to entertain this action. And in thus considering it we are to take, not the proof given upon the trial — upon which it was proper, according to the weight given thereto, to either grant or refuse the relief — but the complaint itself. In other words, we think that this question should be disposed of as a question of law, just as though it was raised upon a demurrer to the complaint.

We recognize the well-settled doctrine that a trustee for bondholders, holding the legal title for the benefit of all concerned, should sue; and in cases where it is to appear that he is competent and willing to institute an action, this right cannot be assumed by a *cestui que trust* or beneficiary or other person. And it is only where it is made to appear that the trustee is unwilling, or by reason of his relations to the grievance of *cestui que trust* or beneficiary he should not be permitted to maintain the action, that it can be maintained by such *cestui que trust* or beneficiary. It will not be seriously disputed that, upon a proper case showing unwillingness on the part of a trustee to bring a proper action, such may be maintained by a beneficiary or *cestui que trust*. Most of the cases to which we have been referred by the respondent, wherein a bill or complaint by a beneficiary has been dismissed, will show that it is because of failure to prove a proper case, and not by reason of lack of jurisdiction that the bill or complaint has been dismissed; that, whether the beneficiary asserts his right in his own name or through the trustee, is more a matter of form than of substantial right; and that the beneficiary will be allowed to sue whenever the wrongs complained of must otherwise go without redress. The position of a trustee under a mortgage given to secure bondholders is similar in principle to that of a corporation with respect to rights inuring to stockholders, and for the redress of which an action would lie in favor of the corporation. With regard to these cases we have the rule clearly laid down that, although an action to recover such losses should, in general, be brought in the name of the corporation; where it refuses, or where the wrongs complained of would otherwise go without

redress, the stockholders, who are the real parties in interest, will be permitted to sue in their own names, making the corporation a defendant. (*Brinckerhoff* v. *Bostwick*, 88 N. Y., 52; *Hawes* v. *Oakland*, 104 U. S., 450.)

We think that here the facts alleged in the complaint show that it would have been futile, if not physically impossible, to have made a demand upon the trustee in time to prevent what was feared, namely, injury to the property of the corporation by its removal; that such allegations supplied a reason for the failure of the trustee to begin the suit, and satisfied the requirement that before the right of the trustee to maintain the action in the first instance is taken away, some statement must be furnished upon which the court can see that the injury sought to be remedied, or the complaint made, would otherwise go unredressed. In this action we do not think that any distinction can be made between an unwilling and an incompetent trustee, because, as illustrated in this very case, while it is true that the trustee's misfortune, and not his misconduct, is the reason why he could not respond to bring the action, this would not alter the fact that, by reason of his not doing so, plaintiff's substantial rights were in jeopardy; and it might well be that delay might result, in a given case, in a substantial denying of justice to all persons interested in the fund.

It will not do, in considering this question, to take account here, that upon the proof the learned trial judge reached the conclusion that the action itself was collusive. We must take the complaint as it stood at the commencement of this action, and its allegations, for the purpose of determining whether a cause of action in favor of a beneficiary was stated, which, in the absence of a demand on the trustee, the failure of which was explained, could be maintained. The court could not assume on the complaint, nor could it see, that the action was collusive. And if we indulge in an opposite assumption to that found by proof upon the trial, viz., that the suit itself was, in good faith, intended to protect the interests of the plaintiff and the defendant, and all other persons interested in the company, we can better reach a conclusion as to whether the court was wanting in jurisdiction to entertain the action or not. Many cases could be referred to wherein, either by the refusal of the trustee to begin the action, or for reasons stated showing the impro-

priety of his bringing the action, it has been maintained in the name of a beneficiary or *cestui que trust;* and we have been referred to no case which goes to the length of holding that where proper reasons are assigned, showing that, in consequence of removal from the jurisdiction or incompency through mental trouble of the trustee, the beneficiary or *cestui que trust* could not maintain the action where such action was necessary to protect the rights of the *cestui que trust* and others interested in the trust property.

The conclusion we have reached on this point leads us to the view that the court had jurisdiction of the action, and upon a proper showing could have granted the relief prayed for at the suit of the plaintiff. We think, also, in an action wherein the court has jurisdiction, that upon notice to the corporation and attorney-general, under circumstances here appearing, the court was not without jurisdiction to appoint a receiver.

Upon such application it was shown that the corporation was insolvent and unable to pay its current expenses; that the landlord had recovered a judgment against it for rent due August first, and levied execution upon the property of the company, and that the company was unable to pay the rent which would fall due on the first of the month following, and anticipated being evicted from the premises in which it was carrying on business. This situation of affairs would certainly justify the appointment of a receiver in a proper action; and the objection that notice thereof was not served upon the defendant trustee, where the difficulty or impossibility of giving such notice was fully shown, cannot affect the validity of the order appointing the receiver.

It is insisted that the authority of the court to appoint a receiver without giving such notice is limited by section 714 of the Code, which, in effect, provides that a temporary receiver shall only be appointed without notice in a case where an order of publication for the purpose of acquiring jurisdiction over the defendant has been published. We think, however, that this section has no application to this case, for the reason that the court, by virtue of service upon and appearance by the corporation through its attorneys, acquired jurisdiction over the defendant corporation, and upon a proper showing, in appointing a receiver it but exercised the power which has been regarded as inherent in the Supreme Court.

Though not entirely in point, the case of the *Attorney-General* v. *Guardian Mutual Life Insurance Company* (77 N. Y., 272) is instructive as to the power of the court in respect to the appointment of receivers. There the order to show cause why a receiver should not be appointed was served neither on the president nor other officer of the company, but on the return, the company appeared by attorneys, who admitted service of the order to show cause. The learned judge writing the opinion in that case says: " The Supreme Court acquired jurisdiction of the proceeding for the appointment of a receiver of the Guardian Life Insurance Company by the presentation of the petition of the attorney-general, setting forth that the superintendent of the insurance department had communicated to him that he had made an examination of the affairs of the company, and that it appeared to the superintendent from such examination that the assets of the company were insufficient to reinsure its outstanding risks. The court, having acquired jurisdiction of the subject-matter by the presentation of the petition, acquired jurisdiction of the corporation by its voluntary appearance by its attorneys on the return of the order to show cause, service of which had previously been admitted by them. This service, followed by the appearance of the attorneys on the return of the order, bound the corporation and dispensed with the necessity of actual service of the order on the president or other officers of the company. There is no proof that the appearance by the attorney was unauthorized, and the presumption is that they appeared by authority of the corporation. A corporation, like a natural person, may appear voluntarily by attorney, and such appearance gives jurisdiction to the same extent as if there was actual service of process. * * * The court, therefore, had jurisdiction to make the decree dissolving the corporation and appointing a receiver. If the decree was improvidently granted, or if for any reason it should be set aside or modified, relief can be had upon application, by any party interested, to the court by which it was made, but the regularity of the appointment of the receiver cannot be questioned by any other tribunal."

The receiver here, upon his appointment, showed in his application to the court, thereafter immediately made for leave to sell the property, that the situation described in the motion papers leading

up to his appointment was correct, and that there was reason to believe that it would be for the best interests of all parties that the property should be sold.

With regard to the power of the court to appoint a receiver and direct a sale of the property by the receiver *pendente lite*, the recent cases in this court, and in the Court of Appeals, growing out of the failure of Levy Bros., so fully discuss these questions that a reference thereto alone is sufficient. And, amongst the others, see *National Park Bank* v. *Goddard* (62 Hun, 31).

The receiver, under the order to sell, disposed of the property, some to third parties and the bulk thereof to the plaintiff, and the parties who purchased on such sale having taken possession of the property so purchased by them, which has been removed, and some of which may no longer be in existence, it would be impossible to have it restored to the corporation in its original condition.

This order of sale was subsequently modified, upon the application of one John Morgan, a judgment-creditor, who had obtained a judgment and made a levy, by directing that the property should be sold "subject to any lien upon the proceeds of such sale that may be established by the said Morgan." As the result of such sale a fund has been obtained by the receiver, of which, in view of the judgment appealed from, it is difficult to see what disposition is to be made.

We have thus, at some length, referred to the situation for the reason that, while we are not disposed to interfere with the conclusion reached by the learned trial judge in refusing relief to the plaintiff, we think that the court, having the power to determine the rights of the parties, should have proceeded in such a way as to do complete justice.

While, therefore, our opinion is, in this case, that the court had jurisdiction of the action, we think the learned trial judge was right in refusing to give any relief to the plaintiff upon his conclusion that "the suit was, upon all the facts adduced at the trial, in a legal sense, collusive, and * * * subversive, as conducted, of Mr. Schumacher's rights," and "that the plaintiff and all concerned should be required to relinquish what they have obtained through these proceedings, and in some form to restore the *status quo*."

To accomplish this, however, we think the complaint should not

have been dismissed, but that, to protect the rights of all parties, namely, the rights of persons who, other than the plaintiff, purchased upon the sale, and the judgment-creditor Morgan, who released his levy upon the property on condition that he should be allowed to have his lien attach to the proceeds of the sale, and, above all, to give to the defendant Schumacher relief to which, in view of the conclusions reached by the learned trial judge, we think he was entitled, it would have been the proper course to have directed an interlocutory reference, to the end, first, that an account might be taken of the value of the property which the plaintiff had thus succeeded in getting into his possession; and, that ascertained, that the property be placed in the receiver's hands for the purpose of securing a fund equal to the value of the assets thus appropriated by the plaintiff for distribution among those entitled thereto.

Unless some such interlocutory reference be had in the action, we fail to see how the court is to restore the *status quo* or to protect its own receiver, whose appointment was not a void one, and against whose disinterestedness and good faith throughout no suggestion is made. As the case now stands, he has a fund in his hands resulting from a sale of the property, which has not been, nor do we see, with the judgment standing in its present form, how it can be, distributed and disposed of. We think that the result of the interlocutory judgment ordering a reference such as suggested will be to have the questions as to the value of the property determined, and that, upon the coming in of such referee's report, the question of the amount which should be paid by the plaintiff to the receiver can be ascertained, and thus the rights of all the parties can be fixed and determined in this action. Should the judgment stand, the questions which could be thus settled will be the unquestioned source of numerous suits and motions which, by following the suggestion indicated, can be settled and adjusted in this one action.

We are of opinion, therefore, that the judgment should be modified in the manner pointed out, by an interlocutory judgment directing a reference for the disposition of the questions indicated, with costs to abide the event.

In regard to the appeal taken from the order of the learned trial judge, refusing to reopen the case for further testimony, but little need be said. The granting or refusing of such a motion was one

resting in the discretion of the court, and we do not find that there was an unjustifiable refusal to exercise it in plaintiff's favor.

The order appealed from should, therefore, be affirmed, with costs and disbursements.

VAN BRUNT, P. J., and LAWRENCE, J., concurred.

Judgment modified as directed in opinion, and, as modified, affirmed, with costs to abide event; order affirmed, with costs and disbursements.